DES MOINES & FORT DODGE RAILROAD COMPANY, Appellant, v.
ROBERT WHITAKER, Appellee.

BOUNDARIES:  Depot Grounds and Right of Way—Evidence—Suf-
1  ficiency.  Evidence reviewed, and held sufficiently certain to
locate the boundary line of a railroad right of way and to show
that an elevator was, in part, located on such right of way.

QUIETING TITLE:  Adverse Claim Justifying Decree.  Plaintiff is
2  entitled to a decree quieting his established title against de-
fendant, even though defendant withdrew his pleading asserting
adverse possession, but filed no disclaimer, and continued, in his
testimony, to make such a claim as amounted to a cloud on plain-
tiff's title.

*Appeal from Dallas District Court.*—HON. W. H. FAHEY,
Judge.

SATURDAY, OCTOBER 30, 1915.

SUIT in equity to quiet title to certain depot grounds,
which are alleged to be partly occupied by defendant's eleva-
tor building.  The defendant filed an answer and a cross-bill,
averring, in substance, that he and his grantors have occupied
the land upon which his elevator is located, by adverse pos-
session for more than 30 years, and averring also that the
land occupied by the elevator is within the boundaries of
Lot 12, Block 29A, owned by the defendant, and is not upon
the plaintiff's depot grounds.

There was a written opinion of the trial court and a
decree dismissing both petitions, on the ground that the evi-
dence did not disclose the location of the true boundary line
between the parties.  The plaintiff has appealed.—*Reversed.*

*W. H. Bremner* and *E. D. Samson,* for appellant.

*Hunn & Jones,* for appellee.

EVANS, J.—The plaintiff is the undisputed owner of depot grounds appurtenant to its railway in Dallas Center. The defendant is the undisputed owner of a certain lot adjoining such depot grounds, and known as Lot 12, Block 29A. Both properties are a part of Huber and Vandercook's Addition to the town of Dallas Center. The plaintiff acquired its railway line through certain predecessors; but for convenience of discussion, we shall refer to the railway and railway company without reference to the particular names of successive owners. The railway company acquired its depot grounds in 1869 by gift and dedication from the owners of the addition referred to. Defendant's title to Lot 12, Block 29A, originated from the same source. The ground of the dismissal of the petitions in the court below is indicated by the following excerpt from the written opinion filed:

1. BOUNDARIES: depot grounds and right of way: evidence: sufficiency.

"Counsel for the plaintiff and defendant in argument assume that the plaintiff, to be entitled to relief herein, should establish that a part of defendant's elevator is upon plaintiff's grounds, and under the issue tendered by plaintiff, I am satisfied that such burden rests upon plaintiff. This must be so; for if it be found that defendant's building was wrongfully upon plaintiff's ground, the court should order it removed, and therefore it would be the duty of the court to fix the boundaries of the grounds and the amount of the building which should be removed or the extent to which same should be removed, and this could only be done upon a showing as to the location of the buildings and the grounds. This being so, unless the plaintiff has offered evidence from which the court can determine where the elevator is located, it follows that the plaintiff's case must fail. The only evidence offered by the plaintiff is the plat filed by Huber and Vandercook, in which plat is dedicated the depot grounds in question. This plat is competent evidence and shows what ground is set apart as depot grounds; but, of course, it does not and cannot

show just what ground was taken under the dedication or what ground was used as depot grounds and, so far as the evidence shows, the grounds actually taken and used may not be upon Huber & Vandercook's Addition at all; in fact, may be west or east of the true grounds. In addition to this plat, the plaintiff has offered evidence of the distance from track to elevator, and also the evidence of Judge Barr as to the track having been actually laid at time plat was filed and that the same has in no manner changed. This, in substance, is the only evidence offered as tending to show the location of the elevator. And unless the court should assume that the plaintiff in fact located their track and railway at the very point where same should have been located, then it is quite evident that plaintiff has not located or established the location of the elevator. I do not find any authority for the court to assume that the plaintiff took possession of any particular ground and, unless the true location of the track is assumed, the measurements made from the track would be no aid to the court. It is no doubt true that a survey made from the monuments and corners established by the plat would reveal the true line of plaintiff's depot grounds, but for some reason such survey was not made.''

The foregoing presents also the substance of the contention of the appellee in this court. The following is a copy of the recorded plat of the addition in question in so far as it relates to the properties under consideration:

This plat was acknowledged on June 14, 1869, and filed for record on the same day. The railway referred to therein was already upon the ground and extended through and beyond the addition in question, as well as through the town of Dallas Center. The main line of the railway was laid in a straight line through the town and through the addition and for several miles in both directions from the town. The actual line upon which the main track was laid at the time the plat was acknowledged and filed has been maintained without any change to this day, as appears from the undisputed evidence. The line in its northerly direction bears 36 degrees west of north, and in the reverse direction, the same number of degrees east of south. The depot grounds dedicated by this plat extended 150 feet northeasterly from the center line of the main track. There is no dispute about this. A sidetrack was constructed by the railroad company to run within a short distance of such northeasterly line, and its stockyards were built so as to occupy up to such northeasterly line. In 1872, an elevator was built upon the present location of the defendant's elevator. It was built so as to present a parallel side to the existing side track and so as to be within a convenient distance from such side track for platform purposes. Some of the railroad officials were present at the time of its location and assented thereto. The owners of the elevator were also the owners of Lot 12 in Block 29A. The lines of the building constructed, however, were not parallel to any of the lines of such lot, its parallels and angles being arranged as before stated with reference to the side track. In February, 1893, the building in question burned. After that date and until 1902, there was no actual occupancy of the grounds by anyone, as distinguished from a constructive occupancy. In 1902, the present building was constructed upon a part of the former foundation, the present building being smaller in dimensions and trenching less upon the alleged depot grounds than the former building. At the time of the location of the second building, the railroad officials were again present in

consultation with the owners of such building. The successive
owners of the building in question, as well as of the former
building, owned likewise Lot 12. Each building was conveyed
in each instance to its successive grantees as a part of or
appurtenant to Lot 12, Block 29A. Several of defendant's
predecessors in title testified as witnesses that, at the time of
their ownership, they understood the building to be located,
in part, upon railway ground. One of these witnesses was one
of the owners who built the present building in 1902. Only
one of the defendant's predecessors in title testified otherwise.
This was Collins, who acquired Lot 12, Block 29A, by mort-
gage foreclosure after the first structure was burned, and
who continued his ownership for some years while it was
not occupied by any structure. It is undisputed that one
corner of defendant's building extends to within 110.8 feet
of the center line of plaintiff's main track. As we under-
stand the record, this is the nearest point of approach; that
a substantial part of the defendant's building is within 150
feet of such center line of the main track is undisputed in the
testimony. We see no fair ground for the claim of uncertainty
in the evidence. The plaintiff caused measurements to be
made upon the ground by an engineer, who reduced his meas-
urements to the form of a plat and the same was introduced
in evidence with the testimony of such engineer. It is undis-
puted that exact measurements were taken from the center
line and at right angles thereto. The resulting plat shows
the location of the land and the amount of ground occupied
by defendant's building. The measurements being made, the
quantity of ground thus covered becomes a mere matter of
computation. The measurements being undisputed, it was
within the right of the trial court to require the parties to
make the computation. The only objection urged in argument
to the engineer's measurements is that his starting point is
uncertain and a mere assumption. The mere starting point
was not material for the purpose of this case. Nor was it
legally necessary to resort to the stakes of the original survey

if certainty was otherwise available. The depot grounds having been indicated upon the plat of dedication and having been laid by definite measure from the center line of the main track then upon the ground, and it appearing indisputably that the location of the main track has never been changed, we can see nothing lacking in certainty in the adoption of such center line as a base from which to measure the northeasterly dimension of the grounds.

We think it clear, therefore, from the evidence in this record, that the defendant's elevator is located in part upon the plaintiff's depot ground and that the attitude of the defendant in claiming adverse possession is a cloud upon the plaintiff's title. The plaintiff was, therefore, entitled to a decree quieting its title, even though the defendant's answer, as finally amended, did not expressly assert any claim to any part of the depot grounds. In his original answer, however, he did assert a claim of adverse possession to so much of the ground as he was occupying, regardless of whether it was part of his own Lot 12 or not. In an amendment, the defendant withdrew this assertion of right, but made no disclaimer. His testimony also shows that he is now making such a claim of right as amounts to a cloud upon plaintiff's title. The plaintiff claims no interest in defendant's building and is not asking any present ouster of possession, but it is asking that its title be established.

2. QUIETING TITLE: adverse claim justifying decree.

The plaintiff is entitled upon this record to a decree quieting its title to its depot grounds and is entitled to have its northeasterly line, so far as the occupancy of the defendant is concerned, fixed at 150 feet, measured at right angles northeasterly from the center line of the present main track of railway. The decree entered below must be accordingly—*Reversed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.